UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LAURIE BEAR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-17-585-G |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Laurie Bear brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income ("SSI") under Title XVI of the Social Security Act, *id.* §§ 1381-1383f. Upon review of the administrative record (Doc. No. 10, hereinafter "R. \_"),[1] and the arguments and authorities submitted by the parties, the Court affirms the Commissioner's decision.

PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff protectively filed her DIB application on July 8, 2014, and filed her SSI application on July 25, 2014. R. 41, 216-22, 223-29. In both applications, Plaintiff alleged a disability onset date of January 1, 2013. R. 41, 216, 223. Following denial of her applications initially and on reconsideration, a hearing was held before an Administrative

---

[1] With the exception of the administrative record, references to the parties' filings use the page numbers assigned by the Court's electronic filing system.

Law Judge ("ALJ") on February 2, 2016. R. 62-96, 143-46, 147-51, 154-56, 157-59. In addition to Plaintiff, a vocational expert ("VE") testified at the hearing. R. 90-95. The ALJ issued an unfavorable decision on February 25, 2016. R. 38-56.

The Commissioner uses a five-step sequential evaluation process to determine entitlement to disability benefits. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. R. 43. At step two, the ALJ determined that Plaintiff had the severe medically determinable impairments of borderline intellectual functioning, anxiety, learning disability, scoliosis, and lumbar degenerative disc disease. R. 43-44. The ALJ also found that Plaintiff had the nonsevere impairment of obesity and that her carpal tunnel syndrome was not a medically determinable impairment. R. 44. At step three, the ALJ found that Plaintiff's condition did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 44-46.

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all her medically determinable impairments. R. 46-53. The ALJ found that Plaintiff had the RFC to

> perform a range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c), in that she can lift and/or carry, push and/or pull 50 pounds occasionally and 25 pounds frequently. She can stand and/or walk 6 hours in an 8 hour day and sit 6 hours in an 8 hour day. She can occasionally climb, balance, stoop, kneel, crouch, and crawl. She can understand, remember and carry out simple instructions, and make simple work-related decisions, but can perform no more than very simple mathematical calculations. She can

have superficial work-related interaction with coworkers, supervisors and the public.

R. 46.

At step four, the ALJ, relying upon the VE's testimony, found that Plaintiff could perform her past relevant work as a fuel/oil delivery driver helper as actually performed. R. 53-54; *see* R. 90-93. The ALJ then made an alternative step-five finding, considering whether there were jobs existing in significant numbers in the national economy that Plaintiff—in view of her age, education, work experience, and RFC—could perform. Relying upon the VE's testimony, the ALJ found that there were three medium, unskilled jobs and three light, unskilled jobs that Plaintiff could perform. R. 54-55; *see* R. 93-95.

Therefore, the ALJ determined that Plaintiff had not been disabled within the meaning of the Social Security Act during the relevant period. R. 56. Plaintiff's request for review by the SSA Appeals Council was denied on March 24, 2017, and the unfavorable decision of the ALJ stands as the Commissioner's final decision. R. 1-7; 20 C.F.R. §§ 404.981, 416.1481.

STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial

evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence "that may undercut or detract from the ALJ's findings," "to determine if the substantiality test has been met." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While the court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## ANALYSIS

In this action, Plaintiff argues that the ALJ erred by: (1) failing to properly weigh the opinion of physician Richard Thomas, MD, and (2) improperly relying on VE testimony at steps four and five. *See* Pl.'s Br. (Doc. No. 13) at 2-12.

I. WHETHER THE ALJ PROPERLY CONSIDERED DR. THOMAS' PRESCRIPTION OF A LUMBAR CORSET

Plaintiff argues that the ALJ erred by failing to "properly assess how much weight Dr. Thomas'[] opinion should receive." Pl.'s Br. at 2. Plaintiff cites her treatment history and alleges that Dr. Thomas' treating-source "opinion"[2] is "contradictory to the ALJ's RFC for medium work with the limitations that [the ALJ] found." *Id.*

---

[2] The record reflects that Plaintiff saw Dr. Thomas only one time, upon a referral from another physician, and obtained one prescription from Dr. Thomas. R. 444-45 (Ex. 14F), 443 (Ex. 13F). Thus, it is not apparent that Dr. Thomas qualifies as a treating source. *See* 20 C.F.R. §§ 404.1502, 416.902 (2016) (defining treating source as an acceptable medical source who has or had "an ongoing treatment relationship" with the claimant). Because

4

In support, Plaintiff cites the record of Plaintiff's November 2015 visit to Dr. Thomas and a prescription Dr. Thomas issued for Plaintiff to obtain a lumbar corset. R. 443, 444-45. In the record, Dr. Thomas recited Plaintiff's self-reported history and complaints, noted his findings on physical examination and upon review of a lumbar-spine MRI, and assessed Plaintiff with left-hip-joint pain and scoliosis of the lumbar spine. R. 444-45. The prescription simply directs that Plaintiff should receive a lumbar corset for indefinite use due to her thoracolumbar scoliosis. R. 443.

Plaintiff argues that the ALJ "turn[ed] a blind eye" to her use of the lumbar corset. Pl.'s Br. at 3 (citing R. 85, 443). Plaintiff argues that a person wearing a lumbar corset would be unable to perform the stooping and crouching required for jobs at the medium-exertion level. *See id.* at 3-4 (citing SSR 85-15, 1985 WL 56857 (1985) for proposition that most medium-exertion work requires frequent stooping and crouching). Plaintiff contends that the ALJ improperly failed to incorporate physical limitations related to her corset use in the RFC and that the RFC finding "conflict[s] with Dr. Thomas's lumbar corset limitations." Pl.'s Br. at 5.

As an initial matter, the special requirements for evaluation and explanation of a treating-physician opinion do not apply here.[3] Social Security regulations define "medical

---

Defendant does not dispute Plaintiff's characterization of Dr. Thomas as her treating physician, *see* Def.'s Br. (Doc. No. 17) at 6-8, however, the Court assumes that this was so.

[3] Specific SSA regulations govern the consideration of opinions by "acceptable medical sources." *See* 20 C.F.R. §§ 404.1502, .1513(a); *id.* §§ 416.902, .913(a). The Commissioner generally gives the highest weight to the medical opinions of a "treating source," which includes a physician who has provided the claimant "with medical treatment or evaluation" during a current or past "ongoing treatment relationship" with the

opinions" as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). For an ALJ to evaluate and assign weight to a medical opinion, a physician must provide "judgment" about the nature and severity of a claimant's limitations or "information" about the activities he or she could still perform despite these limitations. *Cowan v. Astrue*, 552 F.3d 1182, 1189 (10th Cir. 2008). Neither the medical record nor the prescription Plaintiff received from Dr. Thomas for her lumbar corset contains any judgment from Dr. Thomas as to Plaintiff's functional limitations, and neither includes a medical opinion that the ALJ could compare against the medical record and was required to weigh. *See Bales v. Colvin*, 576 F. App'x 792, 797 (10th Cir. 2014) ("Ms. Bales fails to explain how Dr. Reddy's findings have any bearing on her functional limitations, such that the ALJ should have specifically discussed those findings in setting her RFC for medium work.").

The corset prescription is, however, relevant evidence regarding Plaintiff's functional capacity. But Plaintiff's allegation that the ALJ "turn[ed] a blind eye" to her use of a corset is not correct. Pl.'s Br. at 3. The ALJ discussed Dr. Thomas' evaluation and corset prescription in the hearing decision and discussed at length Plaintiff's treatment

---

claimant. *Id.* §§ 404.1502, .1527(c); *id.* §§ 416.902, .927(c); *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). The ALJ's decision "'must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996)).

history related to her musculoskeletal impairments. R. 47-52. The ALJ assessed an RFC for a limited range of medium-exertion work, including that Plaintiff can only "*occasionally* climb, balance, stoop, kneel, crouch, and crawl." R. 46 (emphasis added).

Plaintiff contends that "[a] person utilizing a lumbar corset cannot perform the requirements of medium work, specifically stooping and crouching," but she cites no authority to support that proposition. Pl.'s Br. at 3. Nor does Plaintiff appear to acknowledge that the ALJ included a limitation to occasional rather than frequent stooping and crouching. The medical opinions in the record addressing Plaintiff's physical impairments either found those impairments to be nonsevere (i.e., that they result in no significant functional limitations) or included no findings indicative of the limitations Plaintiff alleges. R. 99-106, 109-16, 121-29, 132-40, 370-72. Plaintiff points to no physician's opinion concerning what, if any, limitations would be associated with, or stem from, use of a lumbar corset. *See* Pl.'s Br. at 3.

As such, Plaintiff's assertions that the ALJ failed to properly address her use of a lumbar corset and that the use of such a corset would prevent her from performing to the RFC find no support in the record. Plaintiff has not shown that reversal is required on this basis.

II. WHETHER THE ALJ IMPROPERLY RELIED ON CERTAIN VOCATIONAL-EXPERT TESTIMONY AS A BASIS FOR THE STEP-FOUR DECISION

Plaintiff alleges that when the VE assessed her past relevant work during the hearing, the VE "made up a job for the claimant which does not exist" in the *Dictionary of Occupational Titles* ("DOT"). Pl.'s Br. at 7. Specifically, Plaintiff contends that the job

7

cited by the VE as Plaintiff's past relevant work, "fuel/oil delivery driver helper," does not exist in the DOT. *Id.* at 7-8; *see* R. 54. Plaintiff argues that the VE arbitrarily reduced the Specific Vocational Preparation[4] associated with this job and added the term "helper" to a job typically classified as "Tank-Truck Driver," and she contends that the ALJ "failed to ask the VE how she arrived at her conclusion to reduce the SVP to get to a nonexistent job." Pl.'s Br. at 7-8.

    During the hearing, the VE characterized Plaintiff's past relevant work:

> VE: Okay. The best match I found for that was a fuel oil delivery driver, although she may not have been doing the actual driving, there isn't a helper aspect --
> ALJ: Okay.
> VE: -- in the DOT so I'm going to just reduce the SVP.
> ALJ: Okay.
> VE: It is classified as medium. This particular title is classified as a 3; a helper would be a 2; the DOT code is 903.683-018.

R. 92. The ALJ then posed to the VE a hypothetical containing the functional limitations ultimately incorporated into the RFC. R. 92-93. The ALJ asked the VE if, given these restrictions, Plaintiff could still perform her past relevant work. R. 93. The VE responded by saying:

> Let's see, the fuel oil delivery driver helper as she performed it which, like I said, that particular DOT is not for a helper. And I believe that would be it due to the office helper job that she had at the radio station that was in --

---

[4] Specific Vocational Preparation ("SVP") focuses on the amount of time needed to properly learn a job. An SVP can range between 1 and 9, 1 being the lowest amount of vocational preparation (short demonstration) and 9 being the highest (over 10 years of education or training). 1 Harvey L. McCormick, *Social Security Claims Practice and Procedures*, § 8:164 (6th ed. 2009). Unskilled work corresponds to an SVP of between 1 and 2; semiskilled work corresponds to an SVP of between 3 and 4; skilled work corresponds to an SVP of between 5 and 9. SSR 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000).

with the public too much.

R. 93.

Plaintiff is correct that the VE, in attempting to classify Plaintiff's past work, crafted a job description that does not exactly correspond to any job in the DOT, chiefly by reducing the SVP associated with Plaintiff's past work from 3 to 2 because Plaintiff did not drive. But Plaintiff offers no specific basis as to why the VE's approach was not "a reasonable explanation" for the discrepancy between the DOT and the VE's testimony, and the Court will not "speculate on [Plaintiff's] behalf." *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999); *Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003); *see* Pl.'s Br. at 8 (asserting only that the VE's reduction of the SVP was "insufficient").

The relevant question, moreover, is not whether Plaintiff's past relevant work precisely matches an occupation listed in the DOT, but whether Plaintiff could do her past job as actually performed given the restrictions in her RFC. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv); SSR 82-61, 1982 WL 31387, at *2 (1982) ("[W]here the evidence shows that a claimant retains the RFC to perform the functional demands and job duties of a particular past relevant job as he or she actually performed it, the claimant should be found to be 'not disabled.'"). In this case, the ALJ posed a hypothetical question to the VE containing all the restrictions contained in the RFC and properly relied upon the VE's testimony to find that Plaintiff could perform her past relevant work. *See* 20 C.F.R. §§ 404.1560, 416.960 ("A [VE] . . . may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or

9

as generally performed in the national economy."); *cf. Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) ("The ALJ propounded a hypothetical question to the VE that included all the limitations the ALJ ultimately included in his RFC assessment. Therefore, the VE's answer to that question provided a proper basis for the ALJ's disability decision."). Plaintiff has not shown that her impairments prevented her from performing her past work, such that the ALJ's step-four finding would be undermined. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

Plaintiff further argues that she would be unable to perform the six unskilled jobs relied on by the ALJ in the alternative step-five finding because the requirements of these jobs exceed her RFC as assessed by the ALJ. R. 55. Specifically, Plaintiff contends that the RFC restriction to performing "no more than very simple mathematical calculations" would prevent her from performing any of the jobs cited by the VE and the ALJ. Pl.'s Br. at 9. Plaintiff argues that "[a]t the very least" the VE should have reduced the base of jobs available given this restriction and further contends that the ALJ should have included an RFC limitation related to Plaintiff's difficulties with reading and spelling. *Id.* at 9-10.

Plaintiff's arguments are without merit. First, because the Court has upheld the ALJ's step-four finding of nondisability, challenges to the alternative step-five finding generally would not support reversal. *See Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."); *Murrell v. Shalala*, 43 F.3d 1388, 1389 (10th Cir. 1994) ("[T]he integrity of a step-four finding is not compromised in any way by the recognition that step five, if it were reached, would dictate

the same [or a different] result." (alteration in original)). Next, Plaintiff offers no support for the proposition that a restriction to performing "no more than very simple mathematical calculations" would make it impossible for Plaintiff to perform any of the unskilled jobs cited by the VE. Pl.'s Br. at 9. And Plaintiff has not established that the reading and spelling problems she alleges, even if accepted by the ALJ, are not already encompassed by the existing RFC. *See* R. 46 (ALJ limiting Plaintiff to only "simple" instructions, "simple" decisions, and "superficial" interaction with others); 20 C.F.R. §§ 404.1568(a), 414.968(a) ("Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."); *see also Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) ("The ALJ was not required to accept the answer to a hypothetical question that included limitations claimed by plaintiff but not accepted by the ALJ as supported by the record."); *Smith v. Colvin*, 821 F.3d 1264, 1270 (10th Cir. 2016) ("The administrative law judge had to ask only about the effect of those limitations ultimately assessed; the judge did not need to ask about the effect of limitations that he didn't believe applied."). Reversal is not warranted on this basis.

## CONCLUSION

The decision of the Commissioner is affirmed. A separate judgment shall be entered.

IT IS SO ORDERED this 28th day of September, 2018.

_____
CHARLES B. GOODWIN
United States District Judge

11